## SUPREME COURT — SPECIAL TERM — KINGS COUNTY.

### July, 1919.

### THE PEOPLE v. JACOB SMITH.

(108 Misc. 240.)

CERTIFICATE OF REASONABLE DOUBT—WHEN MOTION FOR, DENIED—INDICT-MENTS—CRIMINAL LAW—PENAL LAW, § 233(2)

Where the first count of an indictment was dismissed at the trial as insufficient to charge arson in the first or second degrees, but defendant was convicted upon the second count charging arson in the third degree, as defined by section 223(2) of the Penal Law, and the trial judge is satisfied that the testimony of an accomplice of the defendant, though he had been several times convicted of crime, was corroborated by facts and circumstances which tended to connect defendant with the crime, a motion for a certificate of reasonable doubt will be denied.

APPLICATION for a certificate of reasonable doubt.

*Benn Kenyon, District Attorney,* for the people.

*Koenig, Sittenfield & Aranow,* for the defendant.

CLARK, J. :

The defendant was convicted in the County Court of Cayuga county on the 13th day of June, 1919, of the crime of arson

in the third degree, and was sentenced to imprisonment for a term not less than five or more than ten years. Defendant has appealed from such conviction and applies for a certificate of reasonable doubt.

The evidence in this case establishes the fact that defendant was the owner of a creamery at Cato, Cayuga county, in November, 1918, and it was being operated by a corporation of which he was an officer.

On the evening of December 3, 1918, as it is claimed by the People, this creamery was set on fire in pursuance of an arrangement made by defendant with one Moe Harris to do the job, or have it done, and he would pay the expenses.

Defendant complains that the indictment does not charge a crime, and he also contends that all the direct evidence tending to connect defendant with the transaction of setting this fire was given by one Moe· Harris, who, it is charged, defendant had hired to burn the creamery, or have it done, and who was an accomplice, and whose evidence is wholly uncorroborated.

The indictment was in two counts, but was dismissed on the trial as to the first count, which charged in substance that defendant had procured the building to be burned to get the insurance, and the case was submitted to the jury under the second count of the indictment, which charged defendant with committing the crime of arson in the third degree, as follows: "And the grand jury aforesaid by this indictment accuse the said Jacob Smith of the crime of arson in the third degree committed as follows: With force and arms feloniously, wilfully and maliciously did aid, abet, counsel, command, induce and procure another, in the night time of said day the creamery and ice house belonging to the Smith Bros. Suffin Milk and Cream Company, then and there being situate in the town of Cato, Cayuga county, New York, did wilfully and maliciously aid, abet, counsel, command, induce and procure another to burn and set fire to said creamery building, structure or erection with intent to burn the same, against the form of the

statute in such case made and provided and against the peace of the People of the State of New York and their dignity."

This indictment clearly charges defendant with being a principal in the transaction (Penal Law, § 2), and the facts stated not bringing the charge within the definitions of arson in the first or second degrees, it charges defendant with third degree arson as defined in section 223 of the Penal Law, subdivision 2.

The question to be determined here is whether Moe Harris, a witness for the People, and who was concededly an accomplice, was sufficiently corroborated so as to connect defendant. with the crime charged in the indictment.

Conviction cannot be had on the testimony of an accomplice uncorroborated. Code Crim. Pro. § 399.

It is not necessary, however, that the corroboration should, standing alone, be sufficient to connect the defendant with the commission of the crime. It is sufficient if it *tends* to connect. the defendant with the transaction. People v. Elliott, 106 N. Y. 292, 7 N. Y. Crim. 196; People v. Mayhew, 150 id. 346.

And it is for the jury to say whether or not the corroboration is sufficient. People v. Becker, 215 N. Y. 126.

In this case the jury was justified in finding that on the night charged in the indictment the creamery in Cato was set on fire by Moe Harris and one Collins, who had gone to Cato with him from New York city, even though they both denied that they set the fire or had anything to do with it.

The jury could also find from the evidence that Moe Harris was an old acquaintance of defendant, if not an old friend. The evidence is clear and satisfactory that defendant knew Harris well before this transaction, and his denial, after this crime was committed, that he knew or had ever seen Harris, in the face of clear and satisfactory evidence produced at the trial that he did know him, might well have convinced the jury that his attempted repudiation of his old acquaintance after they were both charged with this crime, was a circumstance

*tending* to connect defendant with the transaction in question and thus in a measure corroborate Harris.

Harris was clearly a crook and had been several times convicted of crime and he and defendant were acquaintances, and Harris testified that in the latter part of October or first of November, 1918, he met defendant, in pursuance of an appointment made by the latter, at a restaurant in the city of New York, the location of which he fully described. He testified: "We spoke about business and I asked him how things were, how his business was in New York, and he said everything was fine, but he said his place in Cato was the thing that was on his mind; and he said: 'I wish it would burn up.' I says: 'Well, why don't you let it burn up?' and he asked if I knew of any one that would do it. I told him I was not interested, had a good position, wasn't associated with anybody, but I would try, and if I ran into anybody who knew me and who I thought were all right I would let him know. He said: 'If you do, whatever it will be, I will make good.' He told me to go ahead and whatever I laid out it would be returned."

This was the testimony of Moe Harris, the accomplice, and in and of itself it would not be sufficient to connect defendant with the commission of the crime charged in the indictment.

Was he sufficiently corroborated? If he was, this certificate should not be granted; otherwise it should be. The creamery at Cato owned by defendant and operated by his company had evidently been causing him some concern. The milk from that creamery was sold in New York city, and he had had some controversy with the authorities of the department of health of that city as to the water used at this Cato creamery, and he had been forbidden to use it, as it was claimed to be contaminated. He had told a water inspector from New York in November, 1918: "If I was out of the milk business I would never be back in again." That might be considered some corroboration of Harris' testimony to the effect that defendant said to him in the New York city restaurant when the alleged

arrangement to burn the creamery was made, "Everything was fine, but his place in Cato was the thing that was on his mind."

From the time of this alleged interview between defendant and Harris in the New York city restaurant, as testified to by Harris, up to December 2, 1918, nothing seems to have occurred between defendant and Harris, but on that day Harris called defendant on the telephone at his apartment in New York city. His wife answered the telephone call and said that defendant wasn't in, and on Harris telling her he wanted to see defendant on something important, and wanted some money, she said, according to Harris' testimony, that she would try and get in communication with defendant, and if he (Harris) would let her know just what he wanted, she would see, and he could call later. It appears from the testimony that Harris talked with Mrs. Smith again that afternoon from the Knickerbocker Hotel and she said he could have what he wanted, and they agreed to meet later that afternoon at the hotel. Less than an hour subsequently defendant's wife did meet Harris at the hotel, after first going to a bank where she kept an account, and gave him $150 in cash, and that same night Harris and Collins and another friend of theirs started from New York city to Cato, Harris paying all expenses of the trip, and the creamery fire was started the next night and was discovered shortly after Harris and Collins had left the creamery, after being there from twenty minutes to half an hour. All this evidence was uncontradicted either by Smith or his wife, or any one else so far as I have discovered in the record.

Defendant urges that even if this was all so, Mrs. Smith was not shown to be the agent of her husband and he is not bound by what she said or did. She was living with her husband, who, if Harris is to be believed, had arranged with him to get some one to burn the creamery at Cato, and that he would pay the expenses, or that in substance. In view of the undisputed fact that when Harris called for Smith over the telephone December second, and his wife answered and later furnished

the money Harris asked for and which was followed that same night by his trip to Cato, where the creamery was seen on fire, either when he was in it or soon after he had left it, might well be considered as some corroboration of Harris in his statement that at his interview with defendant in the New York restaurant a few weeks before, defendant had engaged him to burn or get some one to burn this creamery, and tended to connect defendant with this transaction.

But even more significant on the question of corroboration is the transaction at defendant's house on May 28, 1919, as shown by the testimony of Mrs. Moe Harris. According to that testimony Harris was arrested in Philadelphia at three o'clock in the morning, May 28, 1919. At noon that day Mrs. Harris left her husband in jail in that city and went to New York and on arriving there went directly to defendant's apartments and told defendant of her husband's arrest, and he replied, "Moe [meaning Harris] shouldn't have gone to Philadelphia. He should have stayed out of Philadelphia; if he hadn't come to Philadelphia he wouldn't have been caught." Defendant did not dispute this testimony. All this might well be regarded as tending to connect defendant with the transaction of burning the Cato creamery, as testified to by Harris.

Moreover, it appeared by Mrs. Harris' testimony in the same interview at defendant's apartments and in his presence, defendant's wife said, "Don't let any one get hold of me [meaning Mrs. Harris] or let her talk, for she would give them away." Defendant was present and said nothing.

All these facts and circumstances convinced the trial judge that Harris was corroborated by facts and circumstances which tended to connect defendant with the crime, and being thus satisfied, it was his duty to send the case to the jury, whose province it was to say whether or not the accomplice Harris was sufficiently corroborated. People v. Mayhew, 150 N. Y. 346; People v. Everhardt, 104 id. 591.

I have read the voluminous record in this case with the

utmost care, realizing the importance to defendant of this application, but the reading of the record leaves the impression that the entire evidence was of such a character that it tended to connect defendant with the transaction, and therefore was in corroboration of the testimony of the witness Harris.

The learned counsel for defendant cites many cases showing that courts have been liberal in granting certificates of reasonable doubt, but I do not think that in a case like this, where the rights of the defendant were fully safeguarded by an able and experienced trial judge, the practice should be unduly extended. Much of the good effect of a vigorous enforcement of the criminal laws will be destroyed if a man once convicted, after a fair trial before an able and upright judge and a fair and impartial jury, can enjoy full liberty pending the long delays incident to appeals in cases of this character. If I was convinced that any substantial right of defendant had been put in jeopardy, or interfered with on the trial of this case, I should unhesitatingly grant the certificate asked for, but the record shows that defendant had a fair trial; his rights were fully asserted and protected at all times, and the verdict of the jury, who were the triers of the facts, was supported by sufficient competent evidence.

This motion must, therefore, be denied.

Motion denied.

### NOTE.

Penal Law, § 223, was derived from the Penal Code, § 488. It was amended by Laws 1913, ch. 154. The amendment omitted the former subdivision 1 of the section, which by the same amending statute was made subdivision 5 of section 222.

*Necessity of intent to destroy.*—The provisions of this section are directly limited by section 225 of this law to the effect that "the burning of a building under circumstances which show beyond a reasonable doubt that there was no intent to destroy, is not arson," that stipulation being designed and operating as a qualification of the definition of arson in the third degree given here. People v. Fanshaw, 137 N. Y. 68, 10 Crim. 291, affg. 8 Crim. 326.